IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 10-cv-02234-WYD-CBS

NATHAN YBANEZ,

　　Plaintiff,

v.

WARDEN KEVIN MILYARD,
MARY COX-BERGMAN,
STEVEN MAY,
VARIOUS JOHN DOES,
VARIOUS JANE DOES, all sued in their individual and official capacities,

　　Defendants.

## ORDER ON MOTION TO DISMISS

I. INTRODUCTION

THIS MATTER is before the Court on Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6). The motion was filed on January 21, 2011 (ECF No. 10), and a response was filed on February 14, 2011 (ECF No. 11). Plaintiff also filed a motion indicating that he did not wish to abandon any of his claims on September 1, 2011 (ECF No. 12).

II. BACKGROUND

Plaintiff Nathan Ybanez (Ybanez), an inmate at the Sterling Correctional Facility (SCF) in Colorado, filed this civil rights case pursuant to 42 U.S.C. § 1983 and Colorado law, claiming interference with and destruction of his mail in violation of his First

-1-

Amendment rights and rights under the Colorado Constitution.[1]  Defendants are Kevin Milyard, warden of SCF; Mary Cox-Bergman, the Major of the SCF Mail Room; Steven May, acting supervisor of the SCF Mail Room; and unnamed prison personnel working in the SCF Mail Room.

Ybanez's claims fall into three general categories: (1) interference with attorney-client privilege; (2) arbitrary and capricious frustration and delay of mail delivery; and (3) unjustified destruction and non-delivery of incoming mail.  Am. Compl., ECF No. 5, at 3A.  Each of his five claims have distinct factual bases, which I will set forth here.

Ybanez's first claim, for interference with attorney-client privilege and violation of his right to receive mail, is based on Defendants' failure to deliver two letters sent to Ybanez by Susan Lea (Lea), an attorney from California associated with the Pendulum Foundation.  The letters sought information from Ybanez concerning whether the Colorado Department of Corrections (CDOC) provided him "adequate programs, treatment, and educational opportunities."  *Id.,* at 4A.  In December 2008, Ybanez received a "Notice of Rejection/Disposition of Mail" informing him that the first letter from Lea had been intercepted and was being held for investigation because Lea's attorney registration number was invalid.  The letter was later classified as contraband and destroyed.  The second letter from Lea was confiscated and destroyed in January 2009 without notice to Ybanez.  Ybanez's grievances concerning the Lea letters were denied at every level.

The basis for Ybanez's second claim, for violation of the right to receive mail,

---

[1] Ybanez asserts supplemental jurisdiction covers his claims of violation of the Colorado Constitution.  28 U.S.C. § 1367.

was the confiscation of a Christmas card sent to him by his criminal defense attorney, Michael Gallagher, in December 2008. Although the card was not marked "legal" or "privileged," the SCF Mail Room staff treated it as restricted mail pursuant to a policy put in place by Defendant Cox-Bergman requiring that any correspondence containing an attorney's name, registration number, or office be treated as legal mail, whether or not it was marked as such.[2] Accordingly, the card was held for Ybanez at the SCF Living Unit 1 office. When Ybanez arrived at the office to open the card, there was a note attached to the card indicating that if it was "just a Christmas card," it should be confiscated. *Id.,* at 5A. Ybanez opened the Christmas card in the presence of the Living Unit staff who confiscated the card and returned it to the SCF Mail Room. The card was never returned to Ybanez.

Defendant May denied Ybanez's grievance on this matter, stating that the Christmas card had been returned to Gallagher so that it could be sent "appropriately." *Id.,* at 5A. Ybanez alleges in his complaint that the SCF Mail Room policy was more restrictive than the CDOC regulations governing the handling of legal mail required.[3]

Ybanez's third claim, alleging violation of the rights to send legal mail and help an inmate with legal matters, concerns a letter Ybanez sent to another CDOC inmate, Eric Quade (Quade). In December 2008, Ybanez was a plaintiff in a federal lawsuit; his case was consolidated with a lawsuit filed by Quade, and the court directed the plaintiffs

---

[2] The policy also provided that if the contents of the correspondence were not legal in nature, the mail should be confiscated.

[3] According to Ybanez, the CDOC regulations provide that only mail clearly marked as "legal," "privileged," or "confidential" qualifies for restricted inspection. Am. Compl., ECF No. 5, at 5A.

to coordinate their filings. When Ybanez attempted to send a copy of a pleading related to the consolidated cases to Quade as legal mail, the mail was returned to him with the notation that "[m]ail to other inmates is not legal." *Id.,* at 6A. Ybanez attempted to resend the pleading through the regular mail system, but Quade never received it.

Ybanez filed a grievance on this matter. Defendant May denied the grievance but acknowledged that the mail should have been allowed under the restricted inspection practices. Ybanez asserts that Defendants Cox-Bergman and May failed to train the staff of the SCF Mail Room to handle court pleadings and filings as restricted inspection mail.

The factual basis for Ybanez's fourth claim for relief, alleging violation of the rights to receive mail and to aid in legal matters, arose in January 2009 when he received a "Notice of Rejection/Disposition of Mail" from the SCF Mail Room. The Notice informed him that a letter from Mary Grodin (Grodin) had been returned to sender because Ybanez was not allowed to possess someone else's legal documents. *Id.,* at 6B. According to Ybanez, Grodin was a personal friend who was incarcerated in Florida awaiting sentencing. Grodin sent Ybanez some legal papers that had been filed in her case in Florida so that he could review them for her. These papers were returned to Grodin.

Ybanez's grievance on this matter was denied initially on the basis of a CDOC administrative rule prohibiting an inmate from possessing legal documents of another offender outside the presence of the other offender. At the third step of the grievance process, the grievance officer found that the Grodin papers should have been delivered to Ybanez because they were essentially public documents having already been filed

with the court.  Ybanez requested that the language of the CDOC administrative rule be changed to allow possession of public legal documents, but his request was denied.

Ybanez asserts that Defendants Cox-Bergman and May improperly trained the staff of the SCF Mail Room to reject mail containing legal documents with other inmates' names on them, even when the documents had been filed in court.  He further claims that Defendant Milyard failed to ensure that his staff understood the administrative rules governing mail delivery.

Ybanez's fifth claim, for violation of the right to receive mail, concerns an SCF-specific rule instituted by Defendant Milyard in 2007 (IA 300-38).  The rule provides that any outgoing mail returned as undeliverable for any reason ('return to sender' mail) is to be destroyed rather than returned to the inmate who sent it.  Ybanez alleges that, since the implementation of this rule, he has lost "countless" letters that he would otherwise have resent to the intended recipients.  Ybanez has received notice of the destruction of 'return to sender' mail but has not been able to recover it or preserve its contents.  He alleges that Defendant Milyard is aware that the policy causes inmates to "suffer the capricious and unjust loss of their communications to the outside world," but refuses to do anything to mitigate the harm or change the policy.  *Id.,* at 6D.

Ybanez pursued the grievance process with regard to the destruction of 'return to sender' mail, but the grievances were denied at every step.

In summary, Ybanez's claims for relief include:  (1) violation of attorney-client privilege and of the right to receive mail (the Susan Lea letters); (2) violation of the right to receive and keep mail (the Gallagher Christmas card); (3) violation of the right to send legal mail (the Eric Quade matter); (4) violation of the right to receive mail and aid

in legal matters (the Mary Grodin matter); and (5) violation of the right to receive mail returned as undeliverable (the 'return to sender' matter). He requests injunctive and declaratory relief, compensatory damages, and punitive damages.

Defendants move to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6). They argue, *inter alia*, that Ybanez has no private right of action to assert a claim under the Colorado Constitution and that they are entitled to qualified immunity to the extent Ybanez seeks monetary damages. For the reasons stated below, the Motion to Dismiss (ECF No. 10) is GRANTED in part and DENIED in part.

III.     STANDARD OF REVIEW

I review Ybanez's *pro se* pleadings liberally. If I can "reasonably read the pleadings to state a valid claim on which the [plaintiff] could prevail," I should do so. *United States v. Guerrero*, 488 F.3d 1313, 1316 (10th Cir. 2007) (quoting *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999)). I may not, however, rewrite Ybanez's complaint to include claims never presented, *Id.*, nor "assume the role of advocate for the *pro se* litigant." *Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir. 1991).

The Federal Rules of Civil Procedure provide that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to

the plaintiff." *Hall*, 935 F.2d at 1109. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Furthermore, conclusory allegations are "not entitled to the assumption of truth." *Id.* at 1950.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949. Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

IV. ANALYSIS

    A. The State Law Claims

Ybanez asserts Defendants' interference with his mail violated his rights under Article II, Section 10 of the Colorado Constitution. Defendants move to dismiss these claims, arguing that Ybanez has no private right of action under state law.

The Colorado Governmental Immunity Act (CGIA) prescribes the limits of liability for public entities within the State of Colorado. In general, public entities are "immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant." C.R.S. § 24-10-106. Although exceptions to immunity exist for operation of a correctional facility or for dangerous conditions in jails, these waivers of immunity are

-7-

not available to convicted inmates incarcerated therein. § 24-10-106(1.5) ("The waiver of sovereign immunity [related to correctional facilities and jails] does not apply to claimants who have been convicted of a crime and incarcerated in a correctional facility or jail pursuant to such conviction, and such correctional facility or jail shall be immune from liability.").

Although the CGIA does not directly address claims for violations of the state constitution, the Colorado Supreme Court has refused to expand governmental liability for such violations. In *Board of Cnty. Comm'rs of Douglas County v. Sundheim*, 926 P.2d 545, 549-50 (Colo. 1996), the court refused to recognize an implied cause of action for violation of due process and equal protection rights under the Colorado Constitution, stating that the CGIA "clearly defines the boundaries within which aggrieved citizens may obtain relief."

Ybanez attempts to distinguish *Sundheim* on grounds that other adequate remedies existed for the plaintiffs in that case. *Id.* at 553 (noting that available statutory remedies made judicial creation of an implied damages remedy unnecessary). He argues that, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), I should recognize an implied remedy in this case because he has no other effective remedy. I disagree.

Ybanez's claims for declaratory and injunctive relief demonstrate that, unlike in *Bivens*, there are meaningful remedies available to him. Because Defendants are entitled to sovereign immunity under the CGIA, I will dismiss Ybanez's claims for monetary damages to the extent they are brought for violations of the Colorado Constitution.

B. Claim One (The Lea Letters)

Defendants argue that Ybanez fails to state a claim upon which relief may be granted in Claim One, which alleges interference with attorney-client privilege and violation of the right to receive mail based on the destruction of two letters from attorney Susan Lea. They assert that the two isolated confiscations do not rise to the level of a constitutional violation, that the allegations establish only negligence on the part of SCF Mail Room staff, and that there is no allegation of an attorney-client relationship between Ybanez and Lea.[4]

The First Amendment protects Ybanez's right to receive mail in prison. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Defendants argue that "isolated, inadvertent incidents of interference [with an inmate's legal mail] do not rise to the level of a constitutional violation of either the right of access to the courts or the First Amendment." Mot. to Dismiss, ECF No. 10, at 5. Defendants support this claim by citing *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) and *Florence v. Booker*, 23 Fed. Appx. 970, 972 (10th Cir, 2001), but these two cases are distinguishable from the situation at hand. In both *Smith* and *Florence*, the plaintiff complained of a single incident of prison officials mistakenly opening a single piece of legal correspondence prior to delivering it to the inmate. Here, by contrast, prison officials allegedly opened, reviewed, and destroyed two pieces of legal mail addressed to Ybanez, and this despite the fact that the envelopes were clearly labeled as containing legal documents. Am.

---

[4] As to the existence of an attorney-client relationship, construing the facts alleged in the complaint in a light most favorable to the Ybanez, I may infer that such a relationship did exist between him and Ms. Lea.

Compl., ECF No. 5, at 4B.

Defendants contend that these letters were rejected because "mailroom staff did not recognize the [*sic*] Ms. Lea was an attorney because her attorney number did not match her name." Mot. to Dismiss, ECF No. 10, at 6. Ybanez argues that the SCF Mail Room staff either knew or should have known that the letters were from a legitimate attorney, Am. Compl., ECF No. 5, at 4B, and that they were destroyed because of the "unjust practices and policies" of prison officials. Resp. to Defs.' Mot. to Dismiss, ECF No. 11, at 8. Furthermore, considering the complaint as a whole, an inference can be drawn that Defendants could have known that the legal correspondence from Lea concerned Ybanez's then-pending civil action against prison officials. *See* Am. Compl., ECF No. 5, at 6A; Resp. to Defs.' Mot. to Dismiss, ECF No. 11, at 6-7.

While it is possible that the letters were destroyed on account of Defendants' mistaken determination that Lea's attorney number was invalid, at this stage in the litigation I must construe all facts in the light most favorable to the plaintiff, and because I find that Ybanez has sufficiently "nudged [his] claims across the line from conceivable to plausible," *Twombly*, 127 S.Ct. at 1974, I deny the motion to dismiss as to Claim One.

    C.    <u>Claim Two (The Gallagher Christmas Card)</u>

Defendants challenge Ybanez's second claim, for the confiscation of the Christmas card from Michael Gallagher, Ybanez' criminal attorney, on the ground that an isolated incident of mail tampering does not amount to a violation of a plaintiff's constitutional rights. Mot. to Dismiss, ECF No. 10, at 7. However, considering that the two other incidents from Claim One allegedly occurred during this same time period, I find Defendants' argument that this was an "isolated incident" to be unpersuasive. In

short, I find that Ybanez has pled sufficient facts to state a plausible claim for relief, and thus deny the motion to dismiss as to Ybanez's second claim.

D.    Claim Three (The Quade Mail)

Defendants argue that Ybanez's claim concerning the legal pleading sent to co-plaintiff Eric Quade fails because there is no allegation of any injury resulting from the confiscation of the mail and because Ybanez does not have a constitutional right to provide legal assistance to other inmates.

The Tenth Circuit "has made clear that an inmate 'does not have a protected interest in providing legal representation to other inmates.'" *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (quoting *Maschner*, 899 f.2d at 950. More importantly, despite Ybanez's assertion that an inmate may send another inmate legal mail when they are co-plaintiffs in a legal action, this Court has held that "[t]here is no constitutional right to inmate-to-inmate legal communications." *Stine v. Collins*, 2008 WL 596807, at *1 (D. Colo. March 4, 2008). In *Stine*, the plaintiff – a *pro se* inmate – claimed that he had a "constitutional right to communicate with another inmate regarding a prisoner complaint that they jointly filed." *Id.* In rejecting this argument, the *Stine* court cited *Shaw v. Murphy*, 532 U.S. 223, 228 (2001), in which the Supreme Court held that inmate-to-inmate correspondence that includes legal assistance is not entitled to more First Amendment protection than correspondence without any such legal assistance. I find the rule from *Stine* to apply in this situation, and thus grant the motion to dismiss as to Claim Three.

E.    Claim Four (The Grodin Mail)

Defendants attack Claim Four on the grounds that Ybanez lacks standing to

-11-

assert a claim for denial of legal access on the part of Mary Grodin, Ybanez does not have a constitutional right to provide legal assistance to another inmate, and Ybanez's request for injunctive relief is moot as the language of CDOC AR 150-1 has been revised and no longer contains the language which Plaintiff finds objectionable.

Generally speaking, an individual lacks standing to request relief for an injury suffered by another. *See Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993). Accordingly, Ybanez does not have standing to assert a claim for the denial of legal access on behalf of Ms. Grodin. Further, to the extent Ybanez seeks injunctive relief in the form of an amendment to the CDOC administrative regulations concerning possession of legal documents, the request has become moot as Administrative Regulation 150-01 has been revised to remove the restrictive language, effective August 15, 2010. Mot. to Dismiss, ECF No. 10, at 9.

In addition, the Supreme Court has found policies prohibiting inmate-to-inmate mail to be constitutional, *Turner v. Safley*, 482 U.S. 78, 89, 91 (1987) (holding that restrictions on inmate-to-inmate correspondence are "reasonably related to legitimate penological interests"), and as noted above, an inmate does not have a constitutional right to provide legal assistance to another inmate. *Peterson*, 149 F.3d at 1144. For the foregoing reasons, I grant Defendants' motion to dismiss as to Claim Four.

F.     Claim Five (The 'Return to Sender' Policy)

With regard to Ybanez's claim concerning the destruction of 'return to sender' mail, Defendants assert that the disposition of mail sent by Ybanez himself does not implicate the First Amendment but rather constitutes a claim for deprivation of property under the Fourteenth Amendment. Defendants also contend that Claim Five is barred by

the two-year statute of limitation to the extent it concerns incidents occurring outside that time frame.

Defendants contend that because 'return to sender' mail does not directly involve communication with others, it does not implicate an inmate's First Amendment rights. Mot. to Dismiss, ECF No. 10, at 10. I disagree.

As Ybhanez notes, when an inmate's mail is returned for improper address or postage, that inmate is likely to simply make the appropriate adjustments and resend the mail. When the mail is destroyed before the inmate has an opportunity to make these adjustments, that correspondence may not be reproducible (for example, the letter may included a picture, a poem, or a description of events that may be too far removed for the inmate to recount the details with the same level of clarity once he learns that his original letter was returned and destroyed). Thus, the inmate's ability to communicate with the outside world may very well be impaired by the policy.

While this policy may *also* violate Ybanez's Fourteenth Amendment rights, Defendants have not provided sufficient grounds for distinguishing 'return to sender' mail from other forms of mail for First Amendment purposes. Consequently, I find the policy may violate Ybanez's constitutional rights to send and receive mail. Further, while prison officials may regulate prisoners' rights to receive and send mail when the regulations are "reasonably related to legitimate penological interests," *Turner*, 482 U.S. at 89, Defendants' have identified no such interests here. Accordingly, I deny Defendants' motion to dismiss as to Claim Five.

In addition, Defendants argue that, to the extent Claim Five is asserted concerning incidents that occurred more than two years prior to the filing of this action,

they are time barred by the statute of limitations. In § 1983 actions, the forum state's statute of limitations for general personal injury actions must be applied. *Hunt v. Bennett,* 17 F.3d 1263, 1265 (10th Cir. 1994). In Colorado, the appropriate statute of limitation is two years. *Id.* at 1266; C.R.S. § 13-80-102. Under federal law, "The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994). "A civil rights action accrues when facts that would support a cause of action are or should be apparent." *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995).

Construing the facts in a light most favorable to the plaintiff, it is unclear when Ybanez first knew or should have known of the SCF Mail Room policy of destroying RTS mail. I, therefore, reject Defendant's statute of limitations argument.

G. Qualified Immunity

Defendants claim they are entitled to qualified immunity to the extent Ybanez seeks monetary damages from them in their individual capacities. In *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow* places a presumption in favor of immunity of public officials acting in their individual capacities. *Schalk v. Gallemore*, 906 F.2d 491, 499 (10th Cir.1990). Once the defense of qualified immunity is raised, the burden shifts to the plaintiff to come forward with sufficient facts or allegations to demonstrate (1) "that the defendant's actions violated a constitutional or statutory

-14-

right" and (2) that the right "was clearly established at the time of the defendant's unlawful conduct." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir.2001) (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir1995)).

Ybanez argues, and I agree, that he has set forth sufficient facts to plausibly suggest that his constitutional right to send and receive mail has been violated by the acts and policies of Defendants. Ybanez has, therefore, satisfied the first prong of the test. Concerning the second prong, in order to demonstrate that the constitutional right was clearly established, ordinarily "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996) (quoting *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)). As noted above, an inmate's right to send and receive mail has been clearly established since the Supreme Court decided *Thornburgh* in 1989. Therefore, to the extent Defendants' motion to dismiss is based on the defense of qualified immunity, I deny the motion.

### H. Miscellaneous Arguments

Defendants challenge Ybanez's claims for monetary damages on two other grounds. First, they assert that the claims fail due to lack of personal participation on the part of Defendants. Generally speaking, a "defendant cannot be liable under § 1983 unless personally involved in the deprivation." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (citing *Coleman v. Turpen*, 697 F.2d 1341, 1346 n. 7 (10th Cir.1982)). Moreover, "[A] supervisor is not liable under § 1983 for the actions of a subordinate unless an 'affirmative link' exists between the constitutional deprivation and either the

-15-

supervisor's personal participation or his failure to supervise." *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996) (citing *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

In *Grimsley*, the Court held that three prison administrators could not be held personally liable for an alleged Eighth Amendment violation based on previous supervisory roles. 93 F.3d at 679. However, in concluding that the 'affirmative link' had not been established, the Court was careful to note that none of the prison administrators in *Grimley* were acting in supervisory roles at the time of the alleged violation. *Id.* at 680 ("Although the Administrators at various times exercised responsibility over the creation and modification of the training programs used at the prison in the years preceding the incident, the uncontroverted facts indicate that not one of the Administrators was personally involved or ever supervised any of the Officers involved in the incident during which Mr. Grimsley was injured.").

In contrast to *Grimsley*, Ybanez claims that Defendants Cox-Bergman and May handled his mail, supervised SCF Mail Room staff, and knew of the unconstitutional policies but did nothing to address them. Am. Compl., ECF No. 5, at 5B. Ybanez further alleges that the policies that led to his mail being wrongfully confiscated were put in place by Defendant Cox-Bergman, *Id.*, and that his mail was wrongfully confiscated and destroyed "under the direction, guidance and direct supervision" of Defendant May. *Id.* at 4A, 5B. Finally, Ybanez alleges that Defendant Milyard was responsible for the 'return to sender' policy in Plaintiff's fifth claim. Id. at 6D. Given our liberal pleading requirements, I find that Ybanez has sufficiently established an 'affirmative link.'

Defendants' second argument is that the Prison Litigation Reform Act limits

monetary damages for mental or emotional injuries suffered to instances in which an inmate also sustains a physical injury. 42 U.S.C. § 1997e(e). Nowhere in Ybanez's complaint does he seek damages for mental or emotional injuries. I, therefore, reject Defendants' argument that the Prison Litigation Reform Act limits Ybanez's monetary damages.

V.  CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), filed January 21, 2011 (ECF No. 10), is **GRANTED** as to Claims Three and Four, and **DENIED** as to Claims One, Two, and Five.

Dated: September 20, 2011  BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge